## THE SOUTH BROOKLYN.

### CASTLE *v.* THE SOUTH BROOKLYN.

*(District Court, S. D. New York.  April 25, 1892.)*

COLLISION—VESSELS AT PIERS—OBSTRUCTING FERRY SLIP—SAGGING.

   Where the evidence indicated that libelant's canal boat was projecting some 30 feet across the mouth of a ferry slip, contrary to the city ordinances, and the lights of the canal boat were hidden by a tug until the ferryboat was within 100 feet, and that the approach of the ferryboat was careful, and, after the lights of the canal boat were seen, the best that the ferryboat could do, in view of the locality and the tide, was to go ahead, and not stop and back outside of the slip, it was held that the ferryboat was not in fault for entering her slip, nor for the collision which ensued by the sagging of her quarter against the encroaching boats.

In Admiralty.   Libel for collision.

*Hyland & Zabriskie*, for libelant.

*Burrill, Zabriskie & Burrill*, for claimants.

BROWN, District Judge.   After dark on the 29th of October, 1891, a little before 7 o'clock P. M., as the ferryboat South Brooklyn was going into her slip between piers 2 and 3, East river, her stern was carried by the strong flood tide against a tier of five canal boats which had made a landing a few minutes before at the end of pier 3, whereby the stem of the libelant's boat, which was the outer boat in the head tier, was damaged by the braces of the ferryboat beneath her guards.   The above libel was filed to recover the damage.

The libelant contends that the damage was not done by the first contact with the ferryboat, but by her backing after the contact and then going ahead, without giving time for the canal boats to be moved away by the two tugs which were outside of the canal boats. All the witnesses upon the ferryboat, however, testify that she did not back at all; and that the damage arose from the first contact, through the sagging of the ferryboat in the tide, and her continued motion forward until stopped, the braces crashing across the stem of the libelant's boat. Such I find to be the weight of proof. The case, therefore, turns on the question whether the canal boats were in a proper place, or were wrongfully encroaching upon the entrance of the slip; and if so, whether the ferryboat was, notwithstanding that fact, chargeable with negligence and fault in not avoiding them.

The libelant contends that the canal boats did not encroach upon the entrance to the slip, nor extend beyond the westerly line of pier 3. Several of his witnesses, however, give uncertain testimony on this point; while Deats and Harris, who were most positive in his favor, also testified that the ferryboat struck the piles at the corner of pier 3. This is so conclusively disproved as to show that those two witnesses are not to be relied on. The witnesses from the ferryboat and other disinterested witnesses testified that the canal boats did extend to the westward of the line of pier 3 a considerable distance, variously estimated at from 20 to 60 feet. The circumstances of the situation are sufficient to demonstrate the incorrectness of the libelant's theory in this particular, and to show that the canal boats did encroach considerably upon the entrance to the slip.

Measurements show that the slip is about 144 feet wide; that pier 2 projected but 10 feet beyond pier 3; that the ferryboat was 184 feet long, and her extreme width 62 feet; and that the brace next aft of the ferryboat's paddle box, which was the first point of contact with the stem of the libelant's boat, was 122 feet aft of her stem and 62 feet forward of her stern. In entering the slip the ferryboat grazed the piles at the corner of pier 2 along the bluff of her port bow, and then continued moving ahead, being five or ten feet from the side of pier 2 at the time of collision. Now, if models be placed upon a plot of the slip drawn to scale, it will be seen to be impossible that the collision could have happened between the brace aft of the paddle box and the stem of the libelant's boat, had not the libelant's boat encroached considerably upon the slip. The tug Berwind was inside of the five canal boats; so that the stem of the libelant's boat must have been at least 95 feet outside of the end of pier 3, and with the port bow of the ferryboat near the rack along pier 2, the stem could not have struck that brace 122 feet aft of the stem of the ferryboat, unless the canal boat had run at least 30 feet to the westward of the line of pier 3, and by so much encroached on the entrance to the slip. The canal boats had no right to take such a position. It is prohibited by the city ordinances (Rev. Ord. 1866, p. 293) and was an unlawful obstruction to the slip. This I am quite satisfied is the primary cause of the collision.

The circumstances are not, I think, sufficient to charge the ferryboat with fault in attempting to enter her slip instead of waiting outside until the canal boats should have been withdrawn. Until the ferryboat had approached within 100 feet of the slip, she had no reason to suppose that there was any material obstruction to her entrance. Coming around from the west side of Governor's island, the ferryboat had seen the lights of the tug moving in the slip, had sounded an alarm signal, and slowed when at a considerable distance; and then the tug was observed to back out of the way. The position and height of the bows of the tug were such as to hide the much lower lights of the canal boats in front of the pier until the ferryboat was within 100 feet of the slip; and even had those lights been visible and seen before, their position would not have been such as to show clearly in the nighttime that the canal boats were encroaching upon the entrance to the slip. The tug herself was able to go further back at any moment. When the canal boats' lights were seen, I am satisfied that a worse collision would have happened had the ferryboat reversed. Under the circumstances I think she did what was wisest and safest; namely, to go on under a jingle bell to make the straightest possible entrance into the slip.

Even had the canal boats been seen earlier projecting some 30 feet across the mouth of the slip, but leaving about 112 feet space for the ferryboat's entrance, I am not prepared to hold that the ferryboat would be bound to wait outside until the canal boats should be withdrawn. In such cases, where a reasonable space is left, and where the danger from collision is only such comparatively small injuries as may arise from the sagging of boats against each other in the entrance of slips, it might, I think, well be held that boats which unlawfully obstruct the entrance take all the risks of the sagging arising from variable currents, provided the ferryboat so entering uses reasonable skill; and that where so much space is still left, the ferry boat should not be held chargeable with either negligence or fault for attempting to enter at all. See *The Express*, 1 U. S. App. 109, 49 Fed. Rep. 764. Without passing, however, upon the latter point, I am satisfied that the libel should be dismissed upon the grounds previously stated, with costs.